**NOT FOR PUBLICATION**

```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY


GARY HARRIS,                      :
                                  :    Civil Action No. 08-6282 (DRD)
            Plaintiff,            :
                                  :
     v.                           :         O P I N I O N
                                  :
MICHELLE RICCI, et al.,           :
                                  :
            Defendants.           :
```

**APPEARANCES:**

    Gary Harris, Plaintiff pro se
    #283029/469212B
    Northern State Prison
    P.O. Box 2300
    Newark, New Jersey 07114

**DEBEVOISE**, District Judge

Plaintiff Gary Harris, a state prisoner currently confined at the Northern State Prison in Newark, New Jersey, seeks to bring this action in forma pauperis. Based on Plaintiff's affidavit of indigence, the Court will grant the application to proceed in forma pauperis and direct the Clerk of the Court to file the petition without pre-payment of the filing fee.

Having reviewed the petition to identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the complaint's transfer claims and retaliation claims should be dismissed and that the claims requesting damages

for the allegedly illegal hearing procedure should be permitted to proceed.

## BACKGROUND

Plaintiff states that in September of 2006, while housed at the New Jersey State Prison, two "bogus" charges were instituted against him, filed by defendant Dolce of the Special Investigations Division ("SID"). The charges were that he had written a letter using code words that gang members used, and that he had sent money to another inmate's family. Plaintiff insists that he did not commit the infractions because he is a Sunni Muslim, and therefore not a gang member, and that the money he sent was to his wife.

Plaintiff was placed in a "detention cell." A hearing officer came to speak to him, Plaintiff explained the debacle, and the hearing officer told him that the charges would be dropped.

While Plaintiff was housed in detention, apparently between September 4, 2006 until September 21, 2006, defendant Dolce removed him on two occasions to try to obtain a polygraph test concerning a gun found on Plaintiff's housing unit. Plaintiff refused to take the polygraph tests. After Plaintiff's refusals, the hearing officer found Plaintiff guilty of the infractions, without a hearing and without Plaintiff having an opportunity to

defend himself.  Plaintiff states that he could have proven that he was not a gang member if he were granted the hearing.

As a result of the hearing, Plaintiff was transferred from New Jersey State Prison to the Northern State Prison Security Threat Group Management Unit ("STGMU"), where gang members are housed.  Plaintiff asserts that the STGMU is a "dangerous environment."

Plaintiff argues that the "bogus" charges, and the improper procedures where he was not afforded a hearing were in retaliation for him refusing to take the polygraph tests concerning the gun found in the prison.

Three days after arriving at Northern State Prison, on October 27, 2006, defendant Peladino the STGMU hearing chairperson, initiated a hearing for Plaintiff to determine his affiliation or membership to any gang or threat group.  Plaintiff was assigned counsel for the hearing.  Plaintiff was not granted a postponement to gather evidence on his behalf.

Plaintiff states that between February 2007 and May of 2008, he informed defendant Marks, the Director of Custody Operations at the Northern State Prison that he is Muslim.  Plaintiff argues that as a Muslim he cannot be a gang member.

Plaintiff also names as defendants the administrator of the New Jersey State Prison, Michelle Ricci; the former administrator of the Northern State Prison, Lydell Sherrer; the current

administrator of the Northern State Prison, Larry Glover; and the Commissioner of the Department of Corrections, George Hayman.  He asks for monetary relief.

## DISCUSSION

**A.    Standard for Sua Sponte Dismissal**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act ... many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A, that a court must dismiss, at the earliest practicable time, actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can

4

be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47,  (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided detailed and highly instructive guidance as to what type of allegations qualify as sufficient to pass muster under the Rule 8 pleading standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained, in relevant part:

> [T]he pleading standard can be summed up thus: "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage[ ]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element.

5

Phillips, 515 F.3d at 234 (internal citations omitted).

**B.    Section 1983 Actions**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.    Transfer to STGMU**

Plaintiff asserts that he was unlawfully transferred to the STGMU, based on improper hearing procedures.  The Court construes Plaintiff's claim as a due process claim governed by the Fourteenth Amendment.

6

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or enacted law. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999). As to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment").

It is well-established that an inmate does not possess a liberty interest arising from the Due Process Clause in assignment to a particular custody level or security classification or a place of confinement. See Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976);

Montayne, 427 U.S. at 243; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976). Moreover, the custody placement or classification of state prisoners within the State prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225.

Governments, however, may confer on inmates liberty interests that are protected by the Due Process Clause. "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

In this case, Plaintiff was given a committee hearing as to his status as a gang member, and was able to appeal the decision. Plaintiff does not allege that any statute confers a liberty interest in being free from the constraints imposed against inmates classified as gang members. Nor does Plaintiff allege that the conditions under which he is confined present "atypical and significant hardships." Thus, Plaintiff cannot establish any deprivation of his liberty interests under the Due Process Clause. Moreover, the defendants' discretion, pursuant to state prison policy and regulation, to classify Plaintiff as a gang

8

member is reasonably related to the State's legitimate governmental interest in managing its prison and jail facilities and maintaining security and administrative order.

**D.    Improper Hearing Procedures**

Plaintiff asserts that he was not provided a hearing on the disciplinary infractions, for which he was found guilty. These infractions were used as a basis for his transfer to the STGMU.

In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) the right to an impartial hearing; (3) assistance from an inmate or staff representative if the charged inmate is illiterate or if complex issues are involved; (4) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals"; and (5) written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563-72.[1]

---

[1]   In Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  See id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

9

Here, Plaintiff claims that he was denied a hearing with respect to his disciplinary infractions. If true, this would be a violation of Plaintiff's right to due process, and Plaintiff may bring a § 1983 action for money damages related to the alleged denial of procedural due process. See Wolff, supra; Henry v. Sanchez, 923 F. Supp. 1266, 1270 (C.D. Cal. 1996). In Wolff, the Supreme Court held that, although claims for injunctive relief were barred by Preiser v. Rodriguez, 411 U.S. 475 (1973), plaintiffs were allowed to bring a damage claim because the claim was based on "damages for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedure." Sanchez, 923 F. Supp. at 1270. In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court reaffirmed this principle, stating that Wolff "recognized a Section 1983 claim for using the wrong procedures, not for reaching the wrong result.... Thus, the claim at issue in Wolff did not call into question the lawfulness of plaintiff's continuing confinement." Heck, 512 U.S. at 482-83.

When an inmate is not afforded procedural protections to which he may be entitled, the district court must determine whether the denial of due process caused the resulting deprivations for which damages are sought. See Carey v. Piphus, 435 U.S. 247, 261 (1977). A plaintiff who brings a successful § 1983 action based on a due process violation may be entitled to

nominal damages even if there is no proof of actual injury. See Carey, 435 U.S. at 266-67.

Here, liberally construing the complaint, it would appear that Plaintiff is actually challenging the constitutionality of the procedures used, or more correctly, the lack of a hearing as guaranteed under Wolff.  Therefore, the Court will allow this claim to proceed.

**E.    Retaliation Claim**

Plaintiff claims that he was transferred to Northern State Prison in retaliation for refusing the polygraph tests.  However, Plaintiff's retaliation claim must be dismissed.  In order to state a claim for retaliation, Plaintiff must show that: "(i) he engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and (iii) there was a causal relationship between the two."  See Adegbuji v. Green, 280 Fed. Appx. 144, 148, 2008 WL 2083142 at *3 (3d Cir. May 19, 2008)(slip copy)(quoting and citing Rauser v. Horn , 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected

conduct for reasons reasonably related to a legitimate penological interest." Id. at *3 (quoting Rauser, 241 F.3d at 334).

In this case, Plaintiff does not allege facts indicating a causal relationship between refusing to take the polygraph test, and his transfer to Northern State Prison.  Plaintiff alleges facts indicating that he was transferred because of suspicion that he was a gang member, not because of the refusal to provide the polygraph test.  It appears from the facts alleged in the complaint that Plaintiff was transferred because he was found guilty of the infractions, "bogus" or not.  As such, Plaintiff has not alleged facts indicating a retaliation claim under the First Amendment.  This claim will be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

Based on the foregoing, Plaintiff's transfer claims and retaliation claims will be dismissed.  Plaintiff's claims requesting damages for the allegedly illegal hearing procedure will be permitted to proceed.

An appropriate order accompanies this opinion.

*s/Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE
United States District Judge

Dated: July 21, 2009