**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

--------------------------------
                                :
GARY HARRIS,                    :    Civil Action No. 08-6282 (DRD)
                                :
              Plaintiff,        :
                                :
        v.                      :
                                :
MICHELLE R. RICCI et al.,       :         O P I N I O N
                                :
              Defendants.       :
--------------------------------:

**Debevoise**, District Judge:

This matter comes before the Court upon Plaintiff's and Defendants' cross-motions, each seeking summary judgment.  See Docket Entry No. 129 (Plaintiff's motion) and Docket Entry No. 130 (Defendants' motion).  Both motions were duly briefed, see Docket Entries Nos. 134, 135, 137 and 140, and a hearing was held on April 22, 2013.  See Docket Entry No. 142.[1]  For the reasons detailed below, the Court will grant both parties' motions in part and deny them in part.  Plaintiff will be awarded nominal damages in the amount of $1.00, $300 in attorney's fee and allowed to recoup his costs, if such were accrued in accordance with Local Civil Rule 54.1.  The Court will retain jurisdiction over this matter for 180 days to resolve the costs claim, if any.

---

[1]  The transcript of April 22, 2013 hearing ("Transcript") is on file with the Clerk and is available for certification to the United States Court of Appeals for the Third Circuit.

## I.   BACKGROUND

This matter was commenced by Plaintiff on December 12, 2008. See Docket Entry No. 1. At that juncture, Plaintiff proceeded pro se.[2] See id.

Underlying Plaintiff's complaint was a disciplinary hearing that came about after he wrote and submitted for mailing two letters utilizing certain "code words" commonly used by gang members[3] and, in addition, sent money to a certain woman who was a member of another inmate's family.[4] See Docket Entry No. 4, at 2-3 (detailing the same). Plaintiff, therefore, was transferred to another prison facility and, eventually, housed at a special housing unit ("SHU") where others presumed to be gang members were housed for additional surveillance.[5] See id. at 3.

_____

[2] Since Plaintiff was an indigent litigant, the Court granted his application to proceed in this matter in forma pauperis. See Docket Entry No. 5.

[3] These code words ("Almighty Latin Kings," "Tomato Heads," etc.) were references to the "Latin Kings" and "Bloods," i.e., the street gangs that are among the largest in the country.

[4] It appears that, at a certain point, Plaintiff alleged to his prison officials that this woman was his "Muslim wife." The record, however, suggests that he and the woman were never married; rather, it appears that Plaintiff merely declared a niece of another inmate Plaintiff's "wife" and sent her money.

[5] It appears that, prior to that housing arrangement coming about, an administrative hearing was held at the facility where Plaintiff was transferred. Plaintiff was charged with and found guilty of two infractions (one referred to as "*.010," i.e., "participation in a security threat group-related activity," and another being ".802/.754," i.e., "an attempt to give money to the family of another inmate"). The resulting sanction was,

-2-

In his complaint, Plaintiff asserted that he was illegally transferred out of his original facility and wrongly housed at the SHU because, being a Muslim, he could not have possibly been a gang member. See, generally, Docket Entry No. 1. In addition, he alleged that all disciplinary measures applied to him were de facto acts of retaliation ensuing from his refusal to take a polygraph test with regard a certain gun found in the facility where he resided prior to the transfer.[6]  See id.

Plaintiff named, as Defendants in this matter, the Commissioner of the Department of Corrections, the past and present administrators of the facility to which he was transferred, the administrator of the facility where he was housed prior to transfer, the officer who offered him to take a polygraph, the officer who conducted the disciplinary hearing at his post-transfer facility, and a certain Director of Custody Operations who, allegedly, declined Plaintiff's request for some unspecified "Islamic documents."[7]  See id.

seemingly, limited to Plaintiff being housed at the SHU.

[6]  It appears that the facility where Plaintiff used to reside conducted an extensive investigation of the gun issue and, since Plaintiff was initially housed in the area where the gun was found, a certain prison officer offered Plaintiff to take a polygraph test. Plaintiff, however, declined; the record makes it abundantly clear that he was never charged or disciplined in connection with that gun or because of his election not to take the test. See Docket Entry No. 1 and Transcript at 3.

[7]  The Court carefully studied the record in this matter but detected no information as to which "Islamic documents" Plaintiff

-3-

This Court screened Plaintiff's complaint for sua sponte dismissal, see Docket Entries Nos. 4 and 5, and narrowed the scope of Plaintiff's challenges. Specifically, the Court dismissed all claims based on or related to Plaintiff's transfer. See Docket Entry No. 4, at 6-9 (pointing out that Plaintiff had no cognizable liberty interest in being housed at his pre-transfer facility, or any other particular facility, and citing, inter alia, Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238 (1983); and Meachum v. Fano, 427 U.S. 215 (1976)).[8]

The Court also dismissed all Plaintiff's conditions of confinement claims ensuing from his housing at the SHU.[9] See Docket Entry No. 4, at 7-9. Thus, the sole surviving inquiry was the one related to Plaintiff's disciplinary hearing. See id. at 9-11. With regard to that claim, this Court detailed the standard set forth in Wolff v. McDonnel, 418 U.S. 539 (1974), which required: (a) a written notice of the disciplinary charges raised

---

had in mind. At the instant juncture, it appears that Plaintiff has abandoned this issue. Moreover, prison officials' failure to produce these unspecified "Islamic documents," even if such failure took place, would not alter the outcome of the Court's analysis.

[8] In conjunction with that analysis, the Court dismissed Plaintiff's retaliation claim. See Docket Entry No. 4, at 11-12.

[9] Such dismissal was for failure to show that Plaintiff was subjected to an atypical/significant hardship or, alternatively, because such housing was related to a legitimate penological interest. See Sandin v. Conner, 515 U.S. 472, 484 (1995).

against the prisoner; (b) an impartial hearing and, for those
inmates who were illiterate or face complex issues, appointment
of a staff member to assist them in preparation for and during
the hearing; (c) a written post-hearing statement as to the
evidence relied upon for the purpose of imposing the discipline
rendered; and (d) the inmate's opportunity to present evidence
and call witnesses on his behalf, unless such actions would
interfere with the facility's security or other legitimate
penological concerns.  See Superintendent v. Hill, 472 U.S. 445,
454 (1985) (citing Wolff, 418 U.S. at 563-67).

Since the first three elements of the Wolff test were
satisfied, this Court focused its attention on the fourth one and
directed service upon Defendants while noting that, under Carey
v. Piphus, 435 U.S. 247 (1977), an inmate might be entitled to
certain damages for being subjected to a deficient hearing.[10]

Four and a half years of litigation followed.  During this
period: (a) Judge Shipp, then acting as a Magistrate Judge on
this matter, issued a scheduling order directing filing of "any
motion to add new parties . . . by amended . . . complaint"; (b)

_____

[10] At the time of this Court's sua sponte screening, there
was no need to assess the Carey test and Carey remedy.  In
addition, the Court's decision was issued after the Supreme
Court's Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007),
ruling but prior to the issuance of Ashcroft v. Iqbal, 556 U.S.
662 (2009), i.e., during the interim when the courts were split
on whether the reading of Rule 8, as articulated in Twombley,
applied to all civil actions or only to represented commercial
matters, such as the antitrust proceeding in Twombley.

Plaintiff, instead of naming additional parties or stating new
claims, filed a request seeking disclosure of "additional
witnesses"[11] and an inquiry as to whether Defendants would offer
him a settlement in the amount of $1.9 million; (c) Defendants
opposed Plaintiff's application for leave to amend;[12] (d) Judge
Shipp appointed Plaintiff pro bono counsel; (e) two attorneys
made appearances on Plaintiff's behalf; (f) each side moved for
summary judgment; and (g) a hearing was held.

As of now, the focus of Plaintiff's position is on two
facts; these two facts are at the heart of Plaintiff's motion at
bar. See, generally, Docket Entry No. 129 and Transcript.
First, Plaintiff points out that neither prior to and nor even
during his disciplinary hearing, was he provided with his letters
using the code words. Therefore, Plaintiff argues that he was

---

[11]  In fact, Plaintiff never filed an amended pleading.  The
closest Plaintiff came to amending his complaint was his filing
of a letter asserting Religious Land Use and Institutionalized
Persons Act ("RLUIPA") claims.  However, the RLUIPA appears
inapposite to this matter, since it governs religious rights of
incarcerated individuals at federally funded prisons, and the
record at bar is silent as to whether Plaintiff's post-transfer
state prison (or even his pre-transfer prison) received any
federal funding.

[12]  Defendants relied on Sossamon v. Texas, 131 S. Ct. 1651
(2011).  The Sossamon decision addressed the issue of states'
immunity and concluded that the RLUIPA did not constitute a
waiver of that immunity in claims for monetary damages, i.e.,
even if the states or state actors were accepting federal
funding, such acceptance could not operate as an implied waiver
of sovereign immunity.  Moreover, the Sossamon decision did not
disturb the fact that there is no private right of action under
the RLUIPA.

-6-

deprived of a meaningful opportunity to ascertain the charges
against him.

The second fact was, apparently, determined during
discovery. Specifically, the officer who conducted Plaintiff's
disciplinary hearing: (a) made statements suggesting that he
based his disciplinary findings, at least in part, on
investigatory conclusions reached by a prison officer employed at
Plaintiff's pre-transfer facility rather than on that
disciplinary officer's own review of Plaintiff's letters at
issue; and (b) erroneously identified a certain document executed
by Plaintiff as one of Plaintiff's letters upon which the
disciplinary charge and sanction were based.[13]

## II.  SUMMARY OF THE PARTIES' POSITIONS

Defendants' current position appears to be as follows:

1. All claims against the officials named as Defendants because
   of their supervisory positions must be dismissed under Iqbal
   or, in alternative, pursuant to the immunities ensuing from
   the operations of the Eleventh Amendment;

2. All claims against the prison officer who offered Plaintiff
   to take a polygraph or conducted the pre-transfer
   investigation of Plaintiff's letters should be dismissed

---

[13]  That document merely presented Plaintiff's written post-
disciplinary-charge statement confessing that he did draft a
number of letters utilizing the code words at issue.  See
Transcript at 4 and 16.

since such actions do not implicate that officer in any
cognizable wrong;

3.  All claims against the prison officer who conducted the
    disciplinary hearing and sanctioned Plaintiff by placing him
    at the SHU should be dismissed because the factual findings
    made by this officer are supported by the record as it
    stands now; and

4.  Even if Plaintiff was not provided with all due process
    protections he was entitled to, the holding of Carey
    warrants grant of only nominal damages.[14]

See Docket Entry No. 130; see also, generally Transcript.

   Plaintiff's (now counseled) position is:

1.  Plaintiff was denied due process when he was not allowed to
    examine his own letters in preparation for the disciplinary
    hearing;

2.  The disciplinary officer who conducted the hearing violated
    Plaintiff's rights by factoring into his analysis the
    investigatory conclusions reached by the officer employed at

---

[14]  In connection with opposing Plaintiff's summary judgment
motion, Defendants filed an extensive roll of declaratory and
documentary evidence. Those documents appear undisputed by
Plaintiff and show that he was, indeed, given a hearing and
attended it, that he pled guilty to the charges against him at
the hearing, and that he did not request to call any witnesses
nor offered any evidence in his defense. See Docket Entries Nos.
130 and 134.

-8-

Plaintiff's pre-transfer facility;[15] and

3. Plaintiff believes that he suffered a substantial injury warranting non-nominal damages because, having the disciplinary charge on his record, he became no longer eligible for an early release.[16]

See Docket Entry No. 129; see also, generally Transcript.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Carrasca v. Pomeroy, 313 F.3d 828, 832-33 (3d Cir. 2002). A factual dispute is genuine if

---

[15] Plaintiff cites Helms v. Hewitt, 655 F.2d 487 (3d Cir. 1981), which held that a disciplinary hearing officer cannot "rubber-stamp" the statements made by the prison officers who investigated the alleged disciplinary infraction.

[16] It appears that Plaintiff's position to that effect caused Defendants a substantial confusion since, in their reply and during the hearing, Defendants asserted that this Court must abstain from resolution of this matter under Younger v. Harris, 401 U.S. 37 (1971). Defendants' position is a legal error since the Younger abstention requires, inter alia, a showing that the state has an important interest in its currently ongoing proceeding, and that proceeding either addresses or encompassed the issue litigated in the federal forum. Here, no such state proceeding is underway, and the State's interest in avoiding being hypothetically sued by Plaintiff in an out-of-time administrative appeal is marginal at best. While Plaintiff's application for not-nominal damages is without merit, as detailed infra, that application is deficient for a multitude of reasons wholly unrelated to the Younger abstention.

a reasonable jury could return a verdict for the non-movant, and
it is material if, under the substantive law, it would affect the
outcome of the suit.  See Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  Summary judgment will not be denied based
on mere allegations or denials in the pleadings; instead, some
evidence must be produced to support a material fact.  See Fed.
R. Civ. P. 56(c)(1)(A); United States v. Premises Known as 717 S.
Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993).

     The Court shall "view the facts in the light most favorable
to the nonmoving party and draw all inferences in that party's
favor."  Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007)
(citation omitted).  "In considering a motion for summary
judgment, a district court may not make credibility
determinations or engage in any weighing of the evidence . . . ."
Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)
(quoting Anderson, 477 U.S. at 255).

     When the moving party has the burden of proof on an issue at
trial, that party has "the burden of supporting their motions
'with credible evidence . . . that would entitle [them] to a
directed verdict if not controverted at trial.'"  In re Bressman,
327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex, 477 U.S. at
331); see also United States v. Four Parcels of Real Prop., 941
F.2d 1428, 1438 (11th Cir. 1991) ("When the moving party has the
burden of proof at trial, that party must show affirmatively the

absence of a genuine issue of material fact: it . . . must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party") (emphasis removed, internal citations omitted). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. See Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

However, the party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. See Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). However, failure to oppose the motion cannot mean that the Court may consider facts asserted by the moving party "undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2); see also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).

-11-

## IV. DISCUSSION

Both sides here assert positions erroneous in certain respects. Two of these errors appear self-evident.

Defendants are correct that the Eleventh Amendment bars claims seeking monetary damages from state officers acting in their official capacities and, under Iqbal, no individual-capacity claim is viable unless the plaintiff establishes each defendant's personal involvement in the alleged wrong. Since Plaintiff's claims against all Defendants (other than the officer who held Plaintiff's disciplinary hearing) fail to show personal involvement, Plaintiff's position that he has a potentially viable claim against these officers is a facial error. Correspondingly, all claims against these Defendants will be dismissed, and they will be granted summary judgment.[17]

On the other hand, Plaintiff is correct in his position that the prison officer, i.e., Officer Maniscaldo, who conducted Plaintiff's disciplinary hearing was obligated to: (a) rely on his own review of Plaintiff's letters underlying the charge; and (b) allow Plaintiff an opportunity to review these letters in preparation for Plaintiff's disciplinary hearing.[18]

---

[17] Had Plaintiff's complaint been screened for sua sponte dismissal any time after the issuance of Iqbal, all such claims would be dismissed at the screening stage. A fortiori, they are subject to dismissal at the current summary judgment stage.

[18] The latter aspect is paramount. The hearing held in this matter established a bona fide dispute as to whether the

-12-

Since Defendants concede Officer Maniscaldo's failure to comply with either both of these two obligations or, at the very least, with the latter one, Defendants necessarily err in their position that Plaintiff is not entitled to summary judgement at all. Defendants, however, are correct in their conclusion as to the pecuniary outcome of this action, <u>i.e.</u>, that Plaintiff is entitled only to nominal damages.

Here, both sides focus solely on <u>Wolff</u> in their analyses of Plaintiff's disciplinary proceedings. This is an unfortunate oversight.

The due process protections implicated by a disciplinary hearing consist of two interrelated aspects: one is of a quasi-procedural nature, while the other is quasi-substantive. While the procedural aspect ensues from the holding of <u>Wolff</u>, the substantive one provides that the findings made by a disciplinary official could be deemed valid only if they are supported by "some evidence" in the record.[19]  <u>See</u> <u>Hill</u>, 472 U.S. at 454-56;

---

officer did rely on his own review of Plaintiff's letters. <u>See</u> Transcript at 10-13 and 17-24. Thus, had it been the sole issue for this Court to consider, no summary judgment in favor of Plaintiff would be warranted on any issue. However, the parties are not in dispute as to the fact that Plaintiff was deprived of an opportunity to review his letters in preparation for his disciplinary hearing. <u>See</u> <u>id.</u> at 24-25.

[19]  The "some evidence" standard is not demanding since "[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact."  <u>Hill</u>, 472 U.S. at 456. Therefore, the "some evidence" requirement is violated only

Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).

The dual rationale of Wolff-Hill analysis corresponds to the
holding of Carey. In Carey, the Supreme Court observed that "the
basic purpose of a § 1983 damages award should be to compensate
persons for injuries caused by the deprivation of constitutional
rights."[20]  435 U.S. at 254.  Hence, if the flaw at issue is of a
quasi-procedural nature, but the prisoner could have been
subjected to the same disciplinary sanction under a procedurally
proper hearing, the prisoner is "entitled to recover [only]
nominal damages not to exceed one dollar."[21]  Id. at 267.

───────────────

where a disciplinary sanction is rendered *without* any factual
basis or if the *entire* factual basis is false.  Cf. Williams v.
Federal Bureau of Prisons, 85 F. App'x 299, 303 (3d Cir. 2004)
(noting, without endorsement, the holding of Paine v. Baker, 595
F.2d 197, 201 (4th Cir.1979), that "[i]n certain limited
circumstances a claim of constitutional magnitude is raised where
a prisoner alleges (1) that information is in his file, (2) that
the information is false, and (3) that it is relied upon [by an
administrative body] to a constitutionally significant degree
[and to the petitioner's detriment]").

[20]  "'For this reason, no compensatory damages may be
awarded in a § 1983 suit absent proof of actual injury.'"  Farrar
v. Hobby, 506 U.S. 103, 112 (1992) (quoting Carey, 435 U.S. at
264, and citing Memphis Community School Dist. v. Stachura, 477
U.S. 299, 307, 308 n.11 (1986)).  In Carey, plaintiffs, who were
students suspended without procedural due process, were not
entitled to compensatory damages unless they could prove that
they would not have been suspended if they had been afforded a
proper hearing.  See Carey, 435 U.S. at 260.

[21]  In other words, read in conjunction with the holdings of
Wolff and Hill, Carey stands for the proposition that a prisoner
who was subjected to a certain sanction as a result of a
procedurally deficient hearing may recover only $1 if the record
shows that the prison officials had at least "some evidence" to
sanction the prisoner to the same discipline upon conducting a

The case at bar presents this very scenario. Here, Plaintiff concedes that he wrote the letters utilizing the words at issue (and it also appears that he admits sending monies to a female member of another's inmate family, while being not officially married or otherwise officially related to that woman). Thus, he could have been sanctioned to the very same sanction that was imposed upon him. Correspondingly, while he is entitled to summary judgment under Wolff but, under Carey, he can recover only one dollar.

Plaintiff, being seemingly confused about the rationale of Carey and, apparently, failing to factor the holding of Hill into his analysis, misreads Carey as a directive to plead, post-discovery, that his injuries were not nominal. To that end, Plaintiff now asserts that he must have suffered an actual injury and loss of liberty because his prison record reflects a disciplinary charge and, thus, bars him from seeking early release.[22]   See Transcript at 25-28.

procedurally proper hearing.

[22]   This assertion presents a mis-characterized expungement claim. As noted supra, such claim might, perhaps, be viable if the sanction was rendered on the basis of no evidence at all or evidence that was false in its entirety. See Williams, 85 F. App'x at 303 (cautiously noting that the Fourth Circuit's holding in Paine, 595 F.2d at 201, might, perhaps, be adopted in such a unique scenario). Here, however, Plaintiff outright conceded committing the administrative infractions he was charged with, i.e., writing the letters utilizing the "code words" and transferring funds to another inmate's family member. Thus, his sanctions were neither evidence-free nor based on wholly false

Plaintiff's position, however, presents a mere speculation that, had he been sanctioned differently or not sanctioned at all, he might have been entitled for an early release and, correspondingly, could have served a shorter term of imprisonment. Yet, the analysis here does not turn on whether the disciplinary officer could have sanctioned Plaintiff *differently*; rather, it turns on a diametrically opposite inquiry, i.e., whether the disciplinary officer could have imposed the very *same* sanction upon conducting a procedurally proper hearing. Since the record unambiguously shows that Plaintiff could have been sanctioned to the very same disciplinary measure, his speculative position is of no relevance.

Moreover, Defendants' and Plaintiff's positions evince their confusion as to the scope of civil rights and habeas actions.[23]

_____

evidence. It follows that his expungement claim necessarily fails under the Williams-Paine test.

[23] When, during the hearing, Plaintiff was asked to substantiate or quantify his hypothetical potential loss of liberty, he conceded having no answer to that question. See Transcript at 28. Defendants, on their part, analogously conceded their inability to quantify the liberty Plaintiff might have lost and, instead, offered the Court their misplaced reliance on the Younger abstention. See id. at 26-32. The answer to the question that puzzled both sides is at the intersection of civil rights and habeas law. The Court, however, takes this opportunity to note that Plaintiff's counsel's straightforward admission of having no answer to the Court's inquiry was indeed commendable and a credit to his legal ethics, see N.J. Rule of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of . . . law to a

In a series of cases beginning with <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.[24]  One of these cases was <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  There, the Supreme Court addressed the question of whether a prisoner could implicitly challenge the constitutionality of detention in a § 1983 suit seeking only damages (a form of relief not available through a habeas corpus proceeding).  The Court rejected § 1983 as a vehicle to implicitly challenge the lawfulness of detention.

> [I]n order to recover damages for allegedly
> unconstitutional . . . imprisonment, or for other harm
> caused by actions whose unlawfulness would render [the]
> sentence [as currently calculated] invalid, a § 1983
> plaintiff must prove that the . . . sentence has been
> . . . declared invalid by a state tribunal authorized
> to make such determination, or called into question by
> a federal court's issuance of a writ of habeas corpus,
> 28 U.S.C. § 2254.  A claim for damages bearing that
> relationship to a . . . sentence that has not been so
> invalidated is not cognizable under § 1983.

<u>Id.</u> at 486-87 (footnote omitted).

tribunal"), and the parties' confusion was understandable, since the law of prisoners' litigation often appears dense to those not practicing it on daily basis.  <u>See</u> <u>Duncan v. Walker</u>, 533 U.S. 167, 184 (2001) (stressing "the immense complexities of federal habeas corpus law") (citation omitted).

[24]    In <u>Preiser</u>, state prisoners (who were disqualified from an early release as a result of disciplinary proceedings) brought a § 1983 action seeking injunctive relief to compel restoration of their early release rights.  <u>See</u> 411 U.S. at 476.  The Supreme Court, however, held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, . . . his sole federal remedy is a writ of habeas corpus."  <u>Id.</u> at 500.

Three years later, the Supreme Court expressly extended that
rule to prison disciplinary sanctions, holding that a prisoner
cannot bring a suit under § 1983 where the success of that suit
would necessarily imply an undue disqualification from an early
release.[25]  See Edwards v. Balisok, 520 U.S. 641, 646-48 (1997).

Here, Plaintiff's application for the grant of damages
exceeding one dollar is, effectively, inviting this Court to
violate the Heck-Balisok bar by entering a quasi-habeas ruling
that Plaintiff might be entitled to avoid serving his full term.
This the Court cannot do since Plaintiff's damages position is
facially premature and will remain such until and unless he
obtains a favorable state-court or federal habeas ruling actually
reducing his term of imprisonment by a specific period of time.[26]

---

[25]  The key remedy open to a § 1983 prisoner challenging his
procedurally deficient disciplinary hearing is injunctive relief
in the form of a curative disciplinary hearing conducted under a
proper procedure.  See Wilkinson v. Dotson, 544 U.S. 74 (2005).
This is so because, after a procedurally proper hearing, the
prisoner might be subjected to the very same discipline and,
hence, would not obtain a speedier release.  See id. at 80-81.
However, the holding of Carey was not vacated by Wilkinson, since
the remedy of nominal damages envisioned in Carey does not offend
and could be easily harmonized with the injunctive remedy
articulated in Wilkinson.

[26]  Plaintiff also asserted that "some personal effects [of
his] were discarded" during his transfer.  Transcript at 4.  That
claim fails as a matter of law because the New Jersey Tort Claims
Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., and the prison's
grievance procedure, see N.J. Admin. Code § 10A:1-4.1(a)(1)
(effective June 16, 2008), provide all the process that is due.
See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith
v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998),
aff'd 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA and inmate

## V.    ATTORNEYS FEES

Section 1988 provides, in relevant part, that, "[i]n any
action or proceeding to enforce [certain federal statutes
including 42 U.S.C. § 1983], the court, in its discretion, may
allow the prevailing party, other than the United States, a
reasonable attorney's fee as part of the costs," 42 U.S.C. §
1988(b), and applies to the matters where individuals seek to
vindicate their civil rights but qualify only for nominal
damages.[27]   See Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir.
2000) ("[T]he Supreme Court [has issued a] clear directive that
nominal damages are available for the vindication of a
constitutional right absent any proof of actual injury").

The ultimate "amount of a fee award, however, is within the
district court's discretion so long as it 'employs correct
standards and procedures and makes findings of fact not clearly
erroneous.'"   Pub. Interest Research Grp. of N.J. v. Windall, 51

remedy procedures were available post-deprivation remedies
providing all the process which is due, Plaintiff's due process
deprivation of property claim fails and this Court will dismiss
it for failure to state a claim upon which relief may be granted.
See id.; Pettaway v. SCI Albion, 487 F. App'x 766 (3d Cir. 2012)
(dismissing as frivolous inmate's appeal challenging order
dismissing his deprivation of property claim); Crosby v. Piazza,
465 F. App'x 168, 172 (3d Cir. 2012) (affirming dismissal of
inmate deprivation of property claim since administrative
grievance procedure provided adequate post-deprivation remedy).

[27]   The prevailing party may also apply for costs.  See L.
Civ. R. 54.1.  In this District, the process of such application
is detailed at http://www.njd.uscourts.gov/sites/njd/files/
ProceduresReimbursingAttorneys.pdf, at 2.

F.3d 1179, 1184 (3d Cir. 1995) (quoting Ne. Women's Ctr. v.

McMonagle, 889 F.2d 466, 475 (3d Cir. 1989)).

> In Farrar v. Hobby, [the] majority . . . noted that the
> "technical nature" of a nominal damages award
> nevertheless "bear[s] on the propriety of fees awarded
> under § 1988." [506 U.S. 103, 114 (1992).]   Given the
> general principle that courts must "give primary
> consideration to the amount of damages awarded as
> compared to the amount sought" in awarding fees, id.,
> in nominal damages cases, the calculation of fees under
> the traditional lodestar standard "may be an excessive
> amount," id. (quoting Hensley v. Eckerhart, 461 U.S.
> 424, 436 (1983)).   Although Farrar preserved the trial
> judge's right to award fees equal to the lodestar, the
> Court also opined that "[w]hen a plaintiff recovers
> only nominal damages . . . the only reasonable fee is
> usually no fee at all."   Id. at 115.   At the same time,
> it emphasized the broad discretion of district courts
> to award attorneys' fees in nominal damages cases.   See
> id. at 114-15.   Thus, the Court concluded that district
> courts "may lawfully award low fees or no fees without
> reciting the 12 factors bearing on reasonableness or
> multiplying 'the number of hours reasonably expended .
> . . by a reasonable hourly rate.'"   Id. at 115
> (alteration in original) (internal citation omitted)
> (quoting Hensley, 461 U.S. at 430 n.3).   Although she
> joined the majority in Farrar, Justice O'Connor
> authored a separate concurrence "only to explain more
> fully why . . . it [was] appropriate to deny fees in
> [that] case."   Id. at 116 (O'Connor, J., concurring).
> Justice O'Connor . . . sought to clarify [where]
> attorneys' fees would be proper [and noted that] "a
> substantial difference between the judgment recovered
> and the recovery sought suggests that the victory is in
> fact purely technical."   Id. at 121.   In addition, "the
> significance of the legal issue" on which the plaintiff
> prevailed should inform the fee award.   Id.   Finally,
> "success might be considered material if it also
> accomplished some public goal."   Id. at 121-22.
> . . .
> We read Farrar to grant district courts substantial
> discretion to decide whether no fee or some fee would
> be reasonable, as long as they acknowledge that a
> nominal damages award is presumptively a technical
> victory that does not merit an award of attorneys'
> fees.   Whenever the trial court determines that no fee

-20-

> or a low fee is proper, Farrar eliminates the need to
> apply multi-factor tests or calculate the lodestar
> [and] permits a district court to determine the amount
> of any low fee award it deems is warranted by whatever
> means it chooses in its broad discretion. See Farrar,
> 506 U.S. at 115.  . . . Farrar does not establish any
> rule . . . dictating how fees must be calculated if a
> court determines that a low fee is appropriate.

Velius v. Twp. of Hamilton, 466 F. App'x 133, 138 (3d Cir. 2012)

(emphases removed); see also id. at 141 and n. 4 (finding a

lodestar analysis and the resulting award of $2,259 erroneous and

noting that, "[o]n remand, the District Court should consider the

fact that an 'obtuse' verdict 'cannot deter misconduct any more

than a bolt of lightning can; . . . it teaches no valuable lesson

because it carries no discernable meaning' [and] the verdict

sheet in this case does not demonstrate whether the [grant of

nominal damages] was based on [the defendants' act of] pulling

[the plaintiff] from his truck, [or on] handcuffing him too

tightly, or both [and,] thus, it cannot serve any substantial

notice-giving function vis-à-vis the impropriety of tight

handcuffing [for instance]. We further caution that, given the

Farrar rule that nominal damages awards in civil rights cases

usually will warrant no fee and that every civil rights case in

which the plaintiff prevails on the merits vindicates some right,

it cannot be the case that the mere vindication of rights alone

suffices to distinguish those cases in which the presumption of

-21-

no fee is overcome").[28]

Here, the dramatic difference between the amount Plaintiff
sought ($1.9 million) and the one dollar award he is entitled to,
as well as the fact that the legal issues presented by this case
have been long settled, advocate in favor of no fee at all.
However, the Court is mindful that the "technical victory"
achieved in this matter also serves the public goal which is
rarely headlines grabbing but which is, nonetheless, quite
important, i.e., the goal of ensuring that the rights of
prisoners, while limited, are treated with respect and fully
enforced.

Noting that, unlike the verdict in Velius, the holding of
this matter is neither "obtuse" nor incapable of deterring future
misconduct, the Court finds that an award of very low attorney's
fee, not tied to a lodestar analysis, would be more appropriate
than no award at all. See Hawa Abdi Jama v. Esmor Corr. Servs.,
577 F.3d 169 (3d Cir. 2009) (collecting cases and pointing out
that a very low fee is not inappropriate even in a case that has
a relatively small public goal value); see also Lefemine v.

---

[28] "Where recovery of private damages is the purpose of . .
. civil rights litigation, a district court, in fixing fees, is
obligated to give primary consideration to the amount of damages
awarded as compared to the amount sought." Riverside v. Rivera,
477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment).
Such a comparison promotes the Court's "central" responsibility
to "make the assessment of what is a reasonable fee under the
circumstances of the case." Blanchard v. Bergeron, 489 U.S. 87,
96 (1989).

Wideman, 133 S. Ct. 9, 11 (2012) ("Because [the plaintiff] is a 'prevailing party,' he 'should ordinarily recover [some] attorney's fee unless special circumstances would render such an award unjust'") (quoting Hensley, 461 U.S. at 429); accord Lawrence v. Western Pipe Serv., 146 F.R.D. 195 (N.D. Ala. 1993) (where the plaintiff recovered $350, the court found it warranted to award the lump sum of $2,500 to cover, jointly, attorney's fee and costs of litigation), aff'd without opi 19 F.3d 1446 (11th Cir. 1994).

Reflecting on the Supreme Court and Court of Appeals' guidance and applying it to the circumstances of this case, this Court finds $300 attorney's fee the most suitable.   Plaintiff will be allowed an ample opportunity to move for costs, if such were incurred, and the Court will retain jurisdiction over this matter for 180 days to resolve his costs claim, if any.[29]

---

[29]   The Court also takes this opportunity to notice that the pecuniary reward a counsel might be allowed to under the governing legal regime is by no means reflective on the substantial importance and great benefit the services of pro bono counsel provide to the judicial system.   The Court, therefore, takes this opportunity to commend Plaintiff's counsel for electing to give this case their time and attention.   The Court will also direct administrative termination of this matter, but such measure will be solely for the purposes of case management. The courts agree that "an administrative closing has no effect other than to remove a case from the court's active docket and  · permit the transfer of records associated with the case to an appropriate storage repository."   Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 392 (1st Cir. 1999).   The Court of Appeals also discussed the tool of administrative termination with approval, noting its use for the purposes of effective case management.   See Penn W. Assocs. v. Cohen, 371 F.3d 118, 126-28

-23-

**VI. CONCLUSION**

For the foregoing reasons, Plaintiff's motion seeking summary judgment will be granted to the extent that he will be awarded one dollar in damages on his due process claim against his hearing officer, Officer Maniscaldo. Plaintiff's motion will be denied in all other respects. In sync, Defendants' motion will be granted in all respects except for Defendants' position that Plaintiff is not entitled to any damages at all on his due process claim against Officer Maniscaldo.

Plaintiff's motion seeking leave to amend, Docket Entry No. 21, will be denied as moot or, in alternative, as futile, since his proposed amended claims are either facially frivolous or

---

and n. 9 (3d Cir. 2004); see also Mercer v. Allegheny Ludlum Corp., 132 F.R.D. 38, 38-39 (W.D. Pa. 1990), aff'd, 931 F.2d 50 (3d Cir. 1991) (expressing the same sentiment). Moreover, the Penn Court: (a) suggested that a district court's resort to the tool of administrative termination is indicative of the district's tidy docket management, see id. at 128 (noting that the "Lehman's view of administrative closings has been followed by the Courts of Appeals for the Tenth and Eleventh Circuits" and citing, inter alia, the concurrence language in American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 715 (5th Cir. 2002), which observed that "administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets"); and (b) concluded its assessment of the tool with the following unambiguous endorsement: "[administrative termination is] a device that, when used in correct context, enhances a district court's ability to manage its docket." Id. Here, having no information as to whether Plaintiff incurred any costs and if such costs could be recouped in accordance with the governing Local Rule, the Court finds it appropriate to administratively terminate this matter and, in the event Plaintiff moved for costs, direct restoration of this action to the Court's active docket.

legally deficient, or have no factual support in the record.

An appropriate Order accompanies this Opinion.

**DICKINSON R. DEBEVOISE**
**United States District Judge**

Dated: June 11, 2013

-25-